**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

ELAINE WANG,                                              :
                                                          :
       Plaintiff,                                  :   Civil Action No. 1:21-cv-0047
                                                          :
v.                                                        :
                                                          :   **COMPLAINT FOR VIOLATIONS OF**
ARENA PHARMACEUTICALS, INC., AMIT                         :   **SECTIONS 14(a) AND 20(a) OF THE**
D. MUNSHI, GARRY A. NEIL, M.D.,                           :   **SECURITIES EXCHANGE ACT OF**
JAYSON DALLAS, M.D., OLIVER FETZER,                       :   **1934**
PH.D., KIERAN T. GALLAHUE, JENNIFER                       :
JARRETT, KATHARINE KNOBIL, M.D.,                          :   **JURY TRIAL DEMANDED**
TINA S. NOVA, PH.D., NAWAL OUZREN,                        :
and STEVE SCHOCH,                                         :
                                                          :
       Defendants.                                 :

---------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Arena Pharmaceuticals, Inc. ("Arena or the "Company") and the members Arena board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Arena by affiliates of Pfizer Inc. ("Pfizer").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on December 23, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Antioch Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Pfizer, will merge with and into Arena with Arena surviving the merger as a wholly owned subsidiary of Pfizer (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Arena common share issued and outstanding will be converted into the right to receive $100.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Arena stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Evercore Group L.L.C. ("Evercore") and Guggenheim Partners, LLC ("Guggenheim" and together with Evercore, the "Financial Advisors") in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Arena stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Pfizer is headquartered in this District, and the Company's stock is traded on the NASDAQ Stock Exchange, also headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Arena common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Amit D. Munshi has served as a member of the Board since June 2016 and is the President and Chief Executive Officer of the Company.

11. Individual Defendant Garry A. Neil, M.D. has served as a member of the Board since February 2017 and the Company's Chair of the Board since February 2021.

12. Individual Defendant Jayson Dallas, M.D. has served as a member of the Board since February 2017.

13. Individual Defendant Oliver Fetzer, Ph.D. has served as a member of the Board since February 2017.

14. Individual Defendant Kieran T. Gallahue has served as a member of the Board since July 2018.

15. Individual Defendant Jennifer Jarrett has served as a member of the Board since June 2017.

16. Individual Defendant Katharine Knobil, M.D. has served as a member of the Board since June 2020.

17. Individual Defendant Tina S. Nova has served as a member of the Board since September 2004.

18. Individual Defendant Nawal Ouzren has served as a member of the Board since February 2021.

19. Individual Defendant Steve Schoch has served as a member of the Board since June 2021.

20. Defendant Arena is incorporated in Delaware and maintains its principal offices Park City, Utah.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "ARNA."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

23.     Arena, a biopharmaceutical company, focuses on providing novel medicines with pharmacology and pharmacokinetics to patients worldwide. Its investigational clinical programs include Etrasimod (APD334) that is in Phase III clinical trial for ulcerative colitis, Phase IIb/III clinical trial for Crohn's disease, Phase II clinical trial for alopecia areata, Phase III clinical trial for atopic dermatitis, and Phase IIb clinical trial for eosinophilic esophagitis; Olorinab (APD371), which is in Phase IIb clinical trial for the treatment of abdominal pain associated with irritable bowel syndrome; APD418 that is in Phase I clinical trial for acute heart failure; and Temanogrel for coronary microvascular obstruction is in Phase II clinical trial. It also develops ralinepag (APD811), which is in Phase III clinical trial for pulmonary arterial hypertension. The company has collaboration agreements with Second Genome, Inc.; United Therapeutics Corporation; Everest Medicines Limited; Beacon Discovery; Boehringer Ingelheim International GmbH; Eisai Co., Ltd.; Eisai Inc.; and Aristea Therapeutics, Inc. for the development of RIST4721 for treatment of serious immune-mediated inflammatory diseases. Arena was incorporated in 1997 and is based in Park City, Utah.

24.     On December 13, 2021, Arena announced that it had entered into the Proposed Transaction:

> NEW YORK & PARK CITY, Utah--(BUSINESS WIRE)-- Pfizer Inc. (NYSE: PFE) and Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) today announced that the companies have entered into a definitive agreement under which Pfizer will acquire Arena, a clinical stage company developing innovative potential therapies for the treatment of several immuno-inflammatory diseases. Under the terms of the agreement, Pfizer will acquire all the outstanding shares of Arena for $100 per share in an all-cash transaction for a total equity value of approximately $6.7 billion. The boards of directors of both companies have unanimously approved the transaction.

5

Arena's portfolio includes diverse and promising development-stage therapeutic candidates in gastroenterology, dermatology, and cardiology, including etrasimod, an oral, selective sphingosine 1-phosphate (S1P) receptor modulator currently in development for a range of immuno-inflammatory diseases including gastrointestinal and dermatological diseases.

"The proposed acquisition of Arena complements our capabilities and expertise in Inflammation and Immunology, a Pfizer innovation engine developing potential therapies for patients with debilitating immuno-inflammatory diseases with a need for more effective treatment options," said Mike Gladstone, Global President & General Manager, Pfizer Inflammation and Immunology. "Utilizing Pfizer's leading research and global development capabilities, we plan to accelerate the clinical development of etrasimod for patients with immuno-inflammatory diseases."

Arena has built a robust development program for etrasimod, including two Phase 3 studies in ulcerative colitis (UC), a Phase 2/3 program in Crohn's Disease, a planned Phase 3 program in atopic dermatitis, and ongoing Phase 2 studies in eosinophilic esophagitis and alopecia areata.

In UC, the randomized, placebo-controlled, dose-ranging, Phase 2 study (OASIS) evaluated the efficacy and safety of etrasimod in moderate to severe UC patients over 12 weeks versus placebo. In the study, most patients who achieved clinical response, clinical remission, or endoscopic improvement at week 12 experienced sustained or improved effects up to week 46 with etrasimod 2 mg in the open-label extension. Etrasimod also demonstrated a favorable benefit/risk profile, consistent with safety findings reported in the double-blind portion of OASIS. The findings are encouraging as there remains significant unmet need for safe and effective oral therapies in UC for patients with inadequate response, loss of response, or intolerance to conventional or advanced therapies. The OASIS trial supported the advancement of the ELEVATE UC 52 and UC 12 trials, which are currently fully enrolled, and for which data are expected in 2022.

In addition, Arena's pipeline includes two development-stage cardiovascular assets, temanogrel and APD418. Temanogrel is currently in Phase 2 for the treatment of microvascular obstruction and Raynaud's phenomenon secondary to systemic sclerosis. APD418 is currently in Phase 2 for acute heart failure.

> "We're delighted to announce Pfizer's proposed acquisition of Arena, recognizing Arena's potentially best in class S1P molecule and our contribution to addressing unmet needs in immune-mediated inflammatory diseases," said Amit D. Munshi, President and Chief Executive Officer of Arena. "Pfizer's capabilities will accelerate our mission to deliver our important medicines to patients. We believe this transaction represents the best next step for both patients and shareholders."
>
> Pfizer expects to finance the transaction with existing cash on hand.
>
> Under the terms of the merger agreement, Pfizer will acquire all of the outstanding shares of Arena common stock for $100 per share in cash. The proposed transaction is subject to customary closing conditions, including receipt of regulatory approvals and approval by Arena's stockholders.
>
> Pfizer's financial advisors for the transaction are BofA Securities and Centerview Partners LLC, with Ropes & Gray and Arnold & Porter Kaye Scholer LLP acting as its legal advisors. Guggenheim Securities, LLC and Evercore Group LLC served as Arena's financial advisors, while Cooley LLP served as its legal advisor.

\* \* \*

25. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Arena's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

26. On December 23, 2021, Arena filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or

omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by Arena management and relied upon by Evercore in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Evercore with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Arena management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT, and Unlevered Free Cash Flows, but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning the Financial Advisors' Financial Analysis*

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32. With respect to Evercore's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the line items used to calculate the unlevered free cash flows of the Company; (ii) the terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetual growth rates ranging from –(60.0)% to –(80.0)%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.5% to 10.0%; (iv) the weighted cost of capital of Arena; (v) the upfront payment made to Aristea on July 27, 2021; (vi) Arena' net debt as of December 10, 2021; and (vii) the number of fully diluted shares of common stock.

33. With respect to Evercore's *Selected Transactions Analysis* for Arena, the Proxy Statement fails to disclose the implied equity value for each target company selected.

34. With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose the selected public market trading price targets and the equity research analysts who published the targets.

35. With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose: (i) the metrics and multiples of each selected company; (ii) the inputs and assumptions underlying the use of the forward multiple reference range of 2.0x – 4.0x to Arena's estimated 2026 revenue.

36. With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the ten transactions reviewed by Evercore; and (ii) the premiums paid in those ten transactions.

37. With respect to Guggenheim's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the line items used to calculate the unlevered free cash flows of the Company; (ii) the terminal values for the Company; (ii) the inputs and assumptions

underlying the use of perpetual growth rate of –(70.0)%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.00% to 9.75%; and (iv) the weighted cost of capital of Arena.

38. With respect to Guggenheim's *Arena Wall Street Equity Research Analyst Stoc, Price Targets* analysis, the Proxy Statement fails to disclose the selected public market trading price targets and the equity research analysts who published the targets.

39. With respect to Guggenheim's *Premiums Paid in Selected Precedent Merger and Acquisition Transactions* analysis, the Proxy Statement fails to disclose: (i) the transactions reviewed by Guggenheim; and (ii) the premiums paid in those transactions.

40. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Evercore and Guggenheim and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

46. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Arena within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Arena, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Arena, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Arena, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations

13

alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 4, 2022

**MELWANI & CHAN LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*